UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY L. SMITH, Personal
Representative of the Estate of
Rose Mary Washam, Deceased,
                          Plaintiff,                                    Case No. 2:05 CV 71194

v

                                                                        Judge Nancy G. Edmunds

AU SABLE VALLEY COMMUNITY
MENTAL HEALTH SERVICES,
                          Defendant.
_____/

| | |
|---|---|
| Joseph F. Lucas (P23595) | Patrick A. Aseltyne (P23293) |
| Skupin & Lucas, P.C. | Mark E. Rath (P60391) |
| Attorney for Plaintiff | Johnson, Rosati, LaBarge, Aseltyne & Field, P.C. |
| 155 W. Congress, Suite 350 | Attorney for Defendants AVCMHS |
| Detroit, MI 48226 | 303 S. Waverly Road |
| (313) 961-0425 | Lansing, MI 48917 |
| Patrick A. Aseltyne (P23293) | (517)886-3800 |

_____/

## DEFENDANT'S RENEWED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

NOW COMES the Defendant, AuSable Valley Community Mental Health Services, by and through their attorneys, **JOHNSON, ROSATI, LABARGE, ASELTYNE & FIELD, P.C.**, by Patrick A. Aseltyne, and moves this Court for dismissal and/or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(c) for the reasons set forth in the accompanying Brief in Support, which, along with the exhibits attached thereto, are incorporated by reference.

Respectfully Submitted,

JOHNSON, ROSATI, LaBARGE
ASELTYNE & FIELD, P.C.

BY: _____/s/ Patrick A. Aseltyne_____
Patrick A. Aseltyne
Mark E. Rath  (P60391)
Attorneys for Defendant ASVCMHS
303 S. Waverly Road
Lansing, Michigan 48917
(517) 886-3800
P23293
Dated: April 18, 2007          PAseltyne@jrlaf.com

UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY L. SMITH, Personal
Representative of the Estate of
Rose Mary Washam, Deceased,

Plaintiff,

Case No. 2:05 CV 71194

v                                                           Judge Nancy G. Edmunds

AU SABLE VALLEY COMMUNITY
MENTAL HEALTH SERVICES,

Defendants.

_____/

| | |
|---|---|
| Joseph F. Lucas (P23595) | Patrick A. Aseltyne (P23293) |
| Skupin & Lucas, P.C. | Johnson, Rosati, LaBarge, Aseltyne & Field, P.C. |
| Attorney for Plaintiff | Attorney for Defendants AVCMHS |
| 155 W. Congress, Suite 350 | 303 S. Waverly Road |
| Detroit, MI 48226 | Lansing, MI 48917 |
| (313) 961-0425 | (517) 886-3800 |

_____/

## DEFENDANT'S BRIEF IN SUPPORT OF RENEWED
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

### ***** ORAL ARGUMENT REQUESTED*****

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

INDEX OF AUTHORITIES ............................................................................................. ii

STATEMENT OF QUESTIONS PRESENTED ....................................................................iv

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

STANDARD OF REVIEW.............................................................................................. 4

LAW AND ARGUMENT ............................................................................................... 6

   **I.**   **THE PLAINTIFF'S § 1983 CLAIM AGAINST AVCMH FAILS AS A MATTER OF LAW**.............................................................................................................. 6

     **A.**   **No Custom or Policy by AVCMH Caused Deliberate Indifference** .......... 7

     **B.**     **No Issue Created Concerning the Training of Staff** ............................. 10

     **C.**   **The Unrelated DCH-ORR Report Does Not Create a Genuine Issue** ... 11

     **D.**     **Plaintiff's So-Called Expert's Opinion**......................................................... 13

   **II.**   *DOE V CLAIRBORNE COUNTY* **SUPPORTS THE ANALYSIS IN THIS CASE.**.............................................................................................................. 15

   **III.**   **THE 14**[TH] **AMENDMENT SUBSTANTIVE DUE PROCESS ANALYSIS RECOGNIZED IN** *TERRANCE V NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL* **APPLIES TO INDIVIDUALS, NOT MUNICIPAL LIABILITY CLAIMS.**.............................................................................................................. 16

CONCLUSION AND RELIEF REQUESTED ..................................................................... 19

## INDEX OF AUTHORITIES

**Federal Cases**

*Anderson v Liberty Lobby, Inc.*, 477 US 242, 106 S Ct 2505, 91 L Ed 2d 202 (1986) ............... 5

*Bellamy v Bradley*, 729 F2d 416, 418 (6th Cir. 1984) ...................................................... 8

*Berry v City of Detroit*, 25 F3d 1342 (6th Cir 1994) *cert den* 513 U. S. 1111 (1995)............... 13

*Blackburn v Fisk University*, 443 F2d 121(6th Cir. 1971) ............................................ 4, 9

*Celotex Corp. v Catrett*, 477 US 317, 106 S Ct 2548 (1986) ..................................... 5

*City of Canton v Harris*, 489 US 378 (1989) ........................................... 7, 10, 14, 15

*Collignon v Milwaukee County*, 163 F3d 982 (7th Cir. 1998)................................... 17

*DeShaney v Winnebago County Dep't of Social Servs*, 489 US 189 (1989) ........................... 16

*Doe v Claiborne County,* 103 F3d 495 (6th Cir 1996) ................................. iv, 12, 14, 15, 16, 18

*Elkins v Rochester Community Schools*, Slip Copy, 2006 WL 3030980 (ED Mich) ................... 18

*Graham v County of Washtenaw,* 358 F3d 377 (6th Cir 2004) ................................. 17

*Hays v Jefferson County*, 668 F2d 869 (6th Cir.  1982) ...................................8, 10, 11

*Hill v McIntyre*, 884 F2d 271 (6th Cir. 1989) ............................................7, 9, 10

*Leary v Daeschner*, 349 F.3d 888 (6th Cir. 2003) .................................................. 6

*Lewis v City of Irvine*, 899 F2d 451 (6th Cir. 1990)................................................ 10

*Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 US 574, 106 S Ct 1348, 89 L Ed 2d 538 (1986) ............................................................................................ 5

*Mayo v Macomb County*, 183 F3d 554 (6th Cir 1999) .......................................... 10

*Meador v Cabinet for Human Resources*, 902 F2d 474 (6th Cir. 1990), cert. denied,  498 US 867, 111 S Ct 182, 112 L Ed 2d 145 (1990) ....................................................... 4

*Medina-Munnoz v R.J. Reynolds Tobacco Co.*, 896 F2d 5 (1st Cir. 1990)................................... 5

*Molton v City of Cleveland*, 839 F2d 240 (6th Cir. 1988) ........................................... 7

*Morgan v Church's Fried Chicken*, 829 F2d 10 (6th Cir. 1987) ................................... 4

*Pagano* v *Frank*, 983 F2d 343 (1st Cir. 1993) ....................................................... 5

*Rizzo v Goode*, 423 US 362 (1976) ........................................................................... 6

*Shamaeizadeh v Cunigan*, 338 F.3d 535 (6th Cir. 2003) ............................................ 7

*Street v J.C. Bradford & Co.*, 866 F2d 1472 (6th Cir. 1989) ....................................... 5

*Terrance v Northville Regional Psychiatric Hospital*, 286 F3d 834 (6th Cir 2002) .......iv, 16, 17, 18

*Westlake v Lucas*, 537 F2d 857 (6th Cir. 1976) ........................................................ 4

*Youngberg v Romeo*, 457 US 307 (1982) ........................................................... 14, 16, 17, 18

**Michigan Cases**
*Jackson v Detroit*, 449 Mich 420, 537 NW2d 151 (1995) ....................................... 18

**Federal Court Rules**
Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2, 4

Fed R. Civ. P. 56(c)...................................................................................…….....2, 5,15

**Federal Statute**
42 U.S.C. § 1983................................................................................................ 1, 2

**Michigan Statutes**
MCL 330.1200a.................................................................................................... 2

MCL 330.1700..................................................................................................... 11

**Other Authorities**
*10A, Charles A. Wright, et al, Federal Practice and Procedure*, § 2727, at 33 (Supp. 1993) ....... 5

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

1.   Despite the holdings by the Courts in *Doe v Claiborne County,* 103 F3d 495, 509 (6th Cir 1996) and *Terrance v Northville Regional Psychiatric Hospital*, 286 F3d 834, 848 (6th Cir 2002), must the Plaintiff still show that a municipal policy or custom was the moving force behind an alleged 14th Amendment Due Process violation to sustain a §1983 claim against that municipal entity?

     Defendant would answer "yes."

2.   Has the present Plaintiff failed to create a genuine issue of material fact that there was a municipal policy or custom that resulted in the scalding injury suffered by the Plaintiff's decedent?

     Defendant would answer "yes."

## INTRODUCTION

This civil action is brought by Plaintiff, personal representative of the estate of Rose Washam, pursuant to 42 U.S.C. § 1983, alleging only a violation of substantive due process. Defendant's first motion for dismissal and summary judgment was heard by the Court on May 10, 2006, and was granted in part and denied in part in an opinion dated May 16, 2006 (Docket # 41). In the May 16th Opinion,  the Court Ordered that Plaintiff be allowed to amend her complaint to allege a substantive due process claim against this Defendant and former employee Judith Muller, in her official capacity.  The Court also determined that Defendant's motion for summary judgment was premature at that time and denied it without prejudice.

Plaintiff filed an amended complaint on June 12, 2006 (Docket # 42), alleging a substantive due process claim against AuSable Valley Community Mental Health Services (hereinafter AVCMH), however, no additional claim was brought against former employee Judith Muller.  On July 13, 2006, Defendant filed a second motion for dismissal and summary judgment (Docket #43), which was withdrawn without prejudice to its right to file a new motion (Docket #53).   Defendant withdrew its Motion as a result of a telephonic status conference held on October 5, 2006, with the purpose of giving the Court the opportunity to address the issue of former Defendant Judith Muller's prior dismissal as a party Defendant.  The Court ultimately denied Plaintiff's motion to vacate an earlier Order dismissing Judith Muller as a Defendant (Docket # 58).  As a result, the Plaintiff's claim still amounted to a single municipal liability claim against AVCMH.

On December 28, 2006, Defendant renewed its motion for summary judgment and dismissal, which was noticed for hearing on March 21, 2007.  However, the Court issued an Order Striking Defendant's Notice of Renewal of Motion for Summary Judgment on February 26, 2007 (Docket # 61), requiring Defendant to file a new motion addressing specific issues outlined in the Court's Order.  For the reasons set forth in this new Brief, the Defendant now moves the Court for

dismissal and for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6), and 56(c).  Plaintiff has previously not concurred in the relief sought.

### STATEMENT OF FACTS

The estate of Rose Mary Washam brings this single claim for a violation of substantive due process pursuant to 42 U.S.C. § 1983 against the AVCMH.  The substantive due process claim is the only claim that remains, as the Court previously declined to exercise supplemental jurisdiction over the Plaintiff's state law claims, which caused the Plaintiff to file a separate lawsuit in Iosco County Circuit Court (Case No. 05-1978-NO) against multiple defendants, including AVCMH, former employee Judith Muller (formerly Schomaker), and the manufacturer of the allegedly faulty thermostat, Emerson Electric Company.  The State Court action is still pending.

AVCMH is a governmental entity that operates a residential community mental health program which provides services to emotionally disturbed and developmentally disabled individuals, in part through the operation of several adult foster care homes throughout Iosco, Oscoda, and Ogemaw Counties (Plf's Amd. Compl., ¶ 7).  AVCMH operates the River Bend Adult Foster Care home, which is a six bed adult foster care home, located in Oscoda, Michigan (Plf's Amd. Compl., ¶ 9).  Plaintiff's decedent, Rose Mary Washam, was a 58 year old client of AVCMH .  She had been a resident of the River Bend Home or other adult foster care facilities operated by AVCMH (Plf's Amd. Compl., ¶ 10) since 1987.  Rose Washam was diagnosed with profound retardation, a seizure disorder, and a myriad of other health problems (Plf's Amd. Compl., ¶ 11).  Rose Washam could not communicate and she required physical assistance in her daily living.  AVCMHS is a community mental health service provider, organized under the authority found in the Michigan Mental Health Code, MCL 330.1200a *et seq*.

The facts of this case are undeniably tragic and do not appear to be in great dispute.  On the morning of January 7, 2003, Rose Washam was given a shower by an AVCMH employee, former defendant Judith Muller (formerly Schomaker) at the River Bend Adult Foster Care Home.

Judy Muller was a seasoned, competent, and well trained employee.  She worked in her capacity as direct care staff for over 10 years. Judy Muller worked that morning with Nancy Bricker, who had worked as a caregiver in the River Bend Home for almost five years (Exh. 8, Deposition of Nancy Bricker, p 8).  Nancy Bricker had noted that the water in the kitchen sink was hotter than usual earlier that morning, before the decedent received her shower.

Before showering Rose Washam at around 9 a.m., Ms. Muller checked the water temperature by hand and adjusted the water to a comfortable level (Exh. 4, Dep. of Judy Muller, p. 120).  Assuming that the temperature would remain constant and that the water temperature was adjustable (Exh. 4, Muller Dep., p. 98), Muller continued to rinse the soap and shampoo from Rose Washam while, unbeknownst to her, the hot water temperature increased.  During the shower Rose Washam suffered burns from hot water coming through the shower head.  The thermostat that controlled the domestic hot water system in the Home had failed to work properly (Plf's Amd. Compl., ¶17 ).  This mechanical failure caused the domestic hot water supplied to the shower to quickly increase in temperature.

Unfortunately, Judith Muller did not recognize the increase in water temperature in time to prevent the injury.  Muller immediately contacted the AVCMH registered nurse after she realized that an injury had occurred.  Ms. Washam was then immediately taken by ambulance to the St. Joseph Hospital in Tawas City and was thereafter transferred to Hurley Medical Center in Flint (Plf's Amd. Compl, ¶21).  While being treated at Hurley Medical Center, Ms. Washam died on February 3, 2003, of complications from the burns she sustained in the shower (Plf's Amd. Compl, ¶23).

AVCMH was without warning or expectation that such events would occur.  The home was properly operated and maintained in accordance with state rules, regulations and requirements, in every respect.  The Department of Consumer and Industry Services, Bureau of Family Services, routinely inspected and approved of the River Bend facilities.  Having been successfully licensed for years, the River Bend home was operated, and continues to operate, at a high level of

professionalism.  Likewise, AVCMH employees had been properly trained and continuously trained by registered nurses, in the specialized shower and bathing techniques for residents requiring specialized care (Exh. 1 & 2, Affidavits of Martha Priebe and Judy Jackson, R.N.).  Judith Muller had showered Rose Washam frequently over a number of years and had developed a great deal of care and affection toward this longtime resident.  From a safety standpoint, the home itself was professionally maintained by management and staff, including conducting routine weekly tests of water temperatures, a standard of testing which went beyond the state requirements (Exh. 3, River Bend water temperature testing records).

Even after the Plaintiff was provided an opportunity to amend her complaint, the Plaintiff's only remaining claim is that the decedent's substantive due process rights were violated by AVCMH.  This amounts to a municipal liability claim.  Defendant's position is that summary judgment should be granted because the Plaintiff cannot sustain her burden of proving the existence of a municipal liability claim.

## STANDARD OF REVIEW

A Motion to Dismiss under Fed. R. Civ. P. 12(b6) requires the Court to construe the Complaint in the light most favorable to the plaintiffs, accept all of the Complaint's factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of the claims that would warrant relief.  *Meador v Cabinet for Human Resources*, 902 F2d 474, 475 (6th Cir. 1990), cert. denied,  498 US 867, 111 S Ct 182, 112 L Ed 2d 145 (1990). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. See *Morgan v Church's Fried Chicken*, 829 F2d 10, 12 (6th Cir. 1987) *Westlake v Lucas*, 537 F2d 857, 858 (6th Cir. 1976).  See also *Blackburn v Fisk University*, 443 F2d 121, 124 (6th Cir. 1971) (the court is "required to accept only well-pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts.").

A motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate where no genuine issues of material fact remain to be decided and the moving party is entitled to judgment as a matter of law.  *Street v J.C. Bradford & Co.*, 866 F2d 1472 (6th Cir. 1989).  The Sixth Circuit has noted that the federal courts have entered into a "new era" in summary judgment practice.  *Street, supra* Three 1986 Supreme Court decisions —*Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 US 574, 106 S Ct 1348, 89 L Ed 2d 538 (1986); *Anderson v Liberty Lobby, Inc.*, 477 US 242, 106 S Ct 2505, 91 L Ed 2d 202 (1986); and *Celotex Corp. v Catrett*, 477 US 317, 106 S Ct 2548 (1986)— ushered in this era on the standard of review for summary judgment.  These cases, in the aggregate, have lowered the movant's burden on a summary judgment motion.  It has been noted that "taken together the three cases signaled to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." *10A, Charles A. Wright, et al, Federal Practice and Procedure*, § 2727, at 33 (Supp. 1993).  Finally, a party opposing a motion for summary judgment has the burden to come forth with requisite proof supporting his legal claims.

Reading the Supreme Court's holding in *Liberty Lobby* and *Celotex Corp.* together, the Sixth Circuit articulated new principles recognizing that summary judgment should be granted where an opposing party is unable to produce sufficient evidence to demonstrate that it could withstand a directed verdict motion at trial.  *Street, supra*, 1478-1479.  Even when "elusive concepts like motive or intent are in play, 'summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"  *Pagano v Frank*, 983 F2d 343 (1st Cir. 1993) (quoting *Medina-Munnoz v R.J. Reynolds Tobacco Co.*, 896 F2d 5, 8 (1st Cir. 1990)).  The party responding to the motion must "adduce more than a scintilla of evidence to overcome the motion."  *Street, supra* at 1479.  "The mere existence of some alleged factual dispute is not enough; a party must show a genuine issue of material fact."  *Anderson v Liberty Lobby, Inc., supra*, at 2510.

## LAW AND ARGUMENT

**I.    THE PLAINTIFF'S § 1983 CLAIM AGAINST AVCMH FAILS AS A MATTER OF LAW.**

The sole remaining claim is one alleging a substantive due process violation by the AVCMH. The Plaintiff does not specifically allege either a failure to supervise, a failure to train, or action pursuant to an official municipal policy or custom of some nature that caused a constitutional tort under §1983.

The starting point in reviewing a governmental entity's potential liability under §1983 is the Supreme Court's decision in *Monell v Department of Social Services* 436 US 658 (1978). In *Monell*, the Court held that local government units may not be held liable under §1983 on a *respondeat superior* theory. *Respondeat superior* is not a proper basis for liability under §1983. See *Leary v Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Rather, the entity may only be held liable when "action pursuant to official municipal policy of some nature causes a constitutional tort." *Monell supra* at 691. In this regard, the Court summarized its holding as follows:

> We conclude, therefore, that a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, **it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983**.

Id. at 694-95 (emphasis added). The *Monell* Court also emphasized that the alleged unconstitutional policy must have truly "caused" the injury or been the "moving force" behind the unconstitutional behavior. *Id.* at 694. See also *Rizzo v Goode*, 423 US 362, 371 (1976) (noting that there must be "an affirmative link between the occurrence of the various incidents of police misconduct and the adoption of a plan or policy . . . showing their authorization or approval of such misconduct."). *Monell* requires that,

> [t]o establish municipal liability pursuant to §1983, a plaintiff must allege an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [] visited pursuant to governmental 'custom' even

though such a custom has not received formal approval through the body's official decisionmaking channels."

*Shamaeizadeh v Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell*, 436 U.S. at 690-91 (1978)), *cert. denied*, 541 U.S. 1041 (2004)

In *City of Canton v Harris*, 489 US 378 (1989), the Supreme Court reaffirmed and clarified the holding in *Monell* on the question of municipal liability under §1983 in the context of a failure to train claim.   In general, *Canton* holds that in order to prevail on a failure to train claim a plaintiff must show the following three elements:   (1) that the training received by the officers was inadequate to the tasks that the officers must perform; (2) that the inadequacy in training was the result of the municipality's "deliberate indifference to the rights of persons with whom [they] come into contact"; and (3) that the inadequacy in training is the "moving force" behind the constitutional violation.  *Id.* at 388-92.  See also *Hill v McIntyre*, 884 F2d 271, 275 (6th Cir. 1989)

**A.     No Custom or Policy by AVCMH Caused Deliberate Indifference**

In the context of this particular case, the Plaintiff was required to plead and prove that AVCMH "had a custom or policy which caused the officers to be deliberately indifferent to [Washam's] serious medical needs."  *Molton v City of Cleveland*, 839 F2d 240, 243 (6th Cir. 1988). However, the Plaintiff has not pled facts sufficient to show that the alleged violations were the result of an unconstitutional policy or custom of the Defendant.  In fact, the Plaintiff has not so much as identified any specific policy or custom that might give rise to liability against the municipal entity Defendant, despite the fact that Defendant has provided Plaintiff with hundreds of documents to review and consider the viability of making such an allegation.  No consumer deaths have occurred as a result of equipment failure inside any AVCMH facilities prior to the accident involving Rose Washam. (See Exh. 5, Affidavit of Floyd Smith, PhD.)  Moreover, no other serious burn or scald injuries occurred at any AVCMH facilities prior to the accident involving Rose Washam (Exh. 5, Smith Affidavit).   On this basis alone, it is appropriate for this Court to dismiss the Plaintiff's § 1983 substantive due process claim against AVCMH.

Furthermore, on the record before the Court, there is no genuine issue of material fact regarding the adequacy of the policies and procedures of the CMH Defendant, as well as the supervision and training of the AVCMH staff.  AVCMH has established comprehensive written policies and procedures regarding operation of its facilities.  It has promulgated policies and procedures which direct employees in their daily functions.  Upon hiring, new employees receive comprehensive training through a curriculum approved by the Michigan Department of Community Health (Exh. 2, Jackson Affidavit and Exh. 6, Schomaker (now Muller) certificate of completion). Continued education was supplemented through monthly staff meetings and in-services (Exh. 1, Priebe Affidavit).  Staff receives additional training above and beyond the minimum requirements of the Michigan Department of Community Mental Health (Exh. 2, Jackson Affidavit).  Each staff member working in the River Bend home received specific training regarding the techniques of bathing and precautionary measures regarding water temperatures, including Judy Muller (Exh. 1, Priebe Affidavit).  As to supervision, the record indicates that River Bend was managed by a home supervisor (Martha Priebe), and a residential supervisor (Hollie McDonald) (Exh. 1, Priebe Affidavit). There is no evidence that would indicate a lack of supervision on behalf of AVCMH.

Following *Monell*, the federal courts have consistently dismissed § 1983 actions against governmental agencies when the plaintiff is unable to show that supervisory personnel — meaning the "lawmakers" or those whose edicts or acts may fairly be said to represent official policy — "authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Hays v Jefferson County*, 668 F2d 869, 872-74 (6th Cir.  1982); *Bellamy v Bradley*, 729 F2d 416, 418 (6th Cir. 1984).  In other words, a plaintiff must show an "affirmative link between the occurrence of the various incidents of . . .  misconduct and the adoption of any plan or policy by the municipality — expressed or otherwise — showing their authorization or approval of such misconduct." *Bellamy*, *supra,* at 874.

Additionally, in order to survive a motion for summary judgment, a plaintiff must present specific facts in support of the claim that the governmental employees were acting pursuant to a policy or custom instituted by the governmental agency.  Conclusory allegations unsupported by facts are insufficient to state a cause of action under § 1983.  See *Blackburn v Fisk University*, 446 F2d 121 (6th Cir. 1971).  The Plaintiff's allegations in this case are conclusory as well.  The simple fact is that the circumstances of this case were accidental, not the result of any unconstitutional policy or custom of the Defendant.

In *Hill v McIntyre*, 884 F2d 271, 275 (6th Cir. 1989), with regard to the issue of "deliberate indifference," the Court noted that "[o]nly where failure to train reflects a 'deliberate' or 'conscience' choice by a municipality — a 'policy' as defined by prior cases, can a city be liable for such a failure under § 1983."  *Id*. at 389.  The Court further stated that liability could only be imposed where, "[i]n light of the duties assigned to specific officers or employees, the need for more or different training is **so obvious**, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to a need."  *Id*. at 390 (emphasis added).  Moreover, on the adequacy of the training the Court noted:

> [The fact that] a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  (citation omitted). . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to **the usual or recurring situations with which they must deal**.  And finally, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id*. at 390-91 (emphasis added).

Clearly, the Court's opinions in *Canton* and *Hill* indicate that the deliberate indifference standard of liability is not easily satisfied. For example, in *Hays* v *Jefferson County*, 668 F2d 869 (6th Cir. 1982), the court stated:

> Where, as here, the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable.

*Id.* at 871 (citations omitted). See also *Lewis v City of Irvine*, 899 F2d 451, 455 (6th Cir. 1990) ("Whether the training was the best or most comprehensive available has no bearing on the plaintiff's failure to train claim."). It is not enough that the plaintiff show that the injury could have been avoided if the employee had more or better training. *Mayo v Macomb County*, 183 F3d 554 (6th Cir 1999).

## B. No Issue Created Concerning the Training of Staff

In the instant case, the record clearly indicates that the CMH staff have all received extensive training (See 1 & 2, Affidavits of Priebe and Jackson). The domestic water temperature at River Bend was checked on a weekly basis during the midnight shift (See Exh. 3) to ensure that the water temperature remained within the state mandated temperature limits. Training was provided to all staff members regarding how to bathe particular residents, techniques of bathing and precautionary measures regarding water temperatures. (Exh. 2, Jackson Affidavit). The evidence indicates that the Defendant's staff did receive extensive training. In fact, staff receives additional training above and beyond the minimum requirements of the Michigan Department of Community Mental Health (Exh. 2, Jackson Affidavit). The initial training is supplemented by monthly staff meetings and in-service training (Exh. 2, Jackson Affidavit). In short, it is clear that Defendant has made a conscious choice in providing comprehensive training to its staff.

Additionally, no consumer deaths have ever occurred as a result of equipment failure inside any AVCMH facilities prior to the accident involving Rose Washam (Exh. 5, Smith Affidavit). No

other serious burn or scald injuries occurred at any AVCMH facilities prior to the accident involving Rose Washam (Exh. 5, Smith Affidavit).  Further, the Plaintiff will be unable to show that there was a pre-existing, obvious need for more training or better training of its employees.  The home was properly operated and maintained in accordance with state rules, regulations and requirements. Routine inspections of the home by the Department of Consumer and Industry Services, Bureau of Family Services, revealed no defects or need for change.  River Bend's boiler system, which provided water to indirectly heat the domestic hot water, was inspected and certified on a regular basis (See Exh. 7, Boiler Inspection Certificate).  The operation of the River Bend home has always met or exceeded the State operational requirements, which resulted in their maintenance of a state license to operate the facility from 1987 through the unfortunate accident in this case.  Similar to the finding in *Hays*, *supra*, there is no pattern of past misconduct.

### C.    The Unrelated DCH-ORR Report Does Not Create a Genuine Issue

Plaintiff may rely upon a state investigation regarding the AVCMH right's protection mechanisms and the procedures of the AVCMHS recipient right's officer, that was prompted by the complaints of a former AVCMH employee who did not work at the River Bend AFC home.  However, the DCH-ORR investigation only concerned the reporting and investigation aspect of the AVCMH recipient rights reporting system, designed to meet its obligation under Article 7 of the Michigan Mental Health Code, MCL 330.1700 *et seq*.  It  was **not related** to the individual safety of the residents at River Bend, where Rose Washam resided.

Moreover, the investigation never cites to the incident involving Rose Washam as a basis for its continuation or its beginning.  There is absolutely no claim or conclusion by DCH-ORR that a scalding occurred because of any alleged defect in the recipient rights system.  Furthermore, the investigation did not concern the appropriateness of the fixtures or licensure for River Bend, the training of direct care workers, instances of resident injuries in the past, the supervision of resident bathing, or any of the other issues referred to in Plaintiff's Amended Complaint.  Plaintiff may argue

that because the AVCMHS did not cure the perceived deficiency in its recipient rights system as quickly or in the exact manner first urged by the DCH-ORR, this means that the AVCMHS had a 'policy' to fail to act to protect the rights of mental health service recipients.

However, to survive a motion for summary judgment, a plaintiff must present specific facts in support of the claim that the governmental employees were acting pursuant to a policy or custom instituted by the governmental agency.  This means that Plaintiff must establish:  (1) the existence of a clear and persistent pattern of direct care workers seriously injuring residents; (2) notice or constructive notice on the part of the AVCMHS Board; (3) the Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom was the "moving force" or direct causal link in the constitutional deprivation.  *Doe v Claiborne County,* 103 F3d 495, 508 (6th Cir 1996)

Although the facts in this case point to a tragic accident, they do not support a claim against AVCMH based upon some policy by AVCMH.  There is no showing of a clear and persistent pattern of direct care workers seriously injuring residents.  There is also no direct causal link between an occurrence of misconduct and the adoption of any plan, policy, or custom by AVCMH.  For example, there is no evidence to show that the scalding occurred because the direct care staff somehow thought they could get away with mistreating residents because of defects in the recipient right's reporting system.

Judy Muller herself did not testify that she relied upon some "policy" of disregarding the rights of residents when she showered decedent that day.  There is not even evidence that Judy Muller knew of any alleged defects in the rights reporting system or the results of the state investigation.  The fact that a state agency disagreed with a community mental health provider's interpretation of the procedural reporting requirements under the Michigan Mental Health Code and then the two parties resolved their differences (which is what occurred here), with AVCMH

continuing to operate throughout the period of time within which the incident in this case occurred, does not create a policy of deliberate indifference by the agency.

Further, this investigation that the Plaintiff will rely upon cannot infer a "custom" of mistreating residents.  It dealt with alleged deficits in the recipient rights reporting system.  There is absolutely no evidence that points to an affirmative link between the scalding incident and the adoption of a custom of mistreating or neglecting residents.  There is no testimony or documentary evidence in this case to show that it was an institutional custom to be deliberately indifferent to resident's medical needs, including Rose Washam's.  Plaintiff is reaching for an inference of a "custom" based on an unrelated investigation.

### D.    Plaintiff's So-Called Expert's Opinion

Plaintiff would have the Court rely upon the speculative testimony of its professed expert, Lance Youles, to support the notion that, because AVCMHS management was dysfunctional, according to his reading of the DCH-ORR report, this means that the direct care staff would make the mistake that was made in this case.  Of course, Mr. Youles cites no studies to support such a notion but relies instead on the general catch-all, namely, "my experience."  This testimony must be ignored for two reasons.

First, like the suspect testimony of the professed expert in *Berry v City of Detroit,* 25 F3d 1342 (6th Cir 1994) *cert den* 513 U. S. 1111 (1995), that of Mr. Youles has no support in any scientific study. [1]  The Sixth Circuit rejected the testimony of the plaintiff's expert in *Berry* because it assumed that police officers in the field would know about the alleged inadequate disciplines of co-workers who had used excessive force in the past and would themselves use excessive force.  The Court pointed out that there was an unwarranted assumption that officers would use excessive force because discipline was allegedly lax.  *Id.* at 1352  This is the same type of unwarranted assumption Youles engages in, i.e. assuming that because the rights reporting system is defective,

---

[1]  In fact, he admits that there are no such studies and he did not do any.  (Exh 9,  pp. 71-73)

that employees will give scalding showers to residents.  Allowing the use of such an assumption undercuts the requirement that the alleged policy or custom must be the "moving force" behind the unconstitutional act to state a claim against the municipal entity.  *Doe v Claiborne, supra* at 508.  Second, contrary to what Youles states, the DCH-ORR did not conclude that the AVCMH management was dysfunctional, but that the rights reporting system was.

Plaintiff will also likely suggest that her expert believes that River Bend needed an anti-scald device in its plumbing system.  However, the Licensing Rules for Adult Foster Care Small Group Homes (12 or less) did not, and still do not, require such devices.  Neither does the Michigan's Mental Health Code require them.  Moreover, the state licensing consultant, Kelly Greene, whose report is relied upon by the Plaintiff, reaffirmed in her deposition that the anti-scalding devices were not required by any rule, regulation, policy, or statute of the state of Michigan (See Exh. 10, Dep. of Kelly Green, pp. 80-81).  Kelly Green testified that she did not think that these additional safeguards were even a good idea. (*Id.* at p. 81).

The standard for liability is deliberate indifference, not whether an additional piece of equipment or training could have prevented the accident.  See *City of Canton v Harris,* 489 U.S. 378, 390-91 (1989)  Such would be the case in almost any accident, and imposing liability against a municipality under §1983 on this basis is improper.  *Ibid*  Since the state rules did not require installation of anti-scald devices, the River Bend staff monitored water temperatures more often than was required by the state, Muller and Bricker were both experienced staff who were trained in showering techniques, and the decedent had been given daily showers as a resident of an AVCMH facility for over 15 years without incident, it can hardly be said that AVCMHS was deliberately indifferent to her needs.

The fact that the Plaintiff has now amended her complaint to allege a Fourteenth Amendment substantive due process claim as recognized in *Youngberg v Romeo*, 457 US 307 (1982), does not change the Plaintiff's burden of proof regarding her municipal liability claim.  In

light of the high standards of liability mandated by *Canton*, and the complete lack of evidence that Defendant's employees were improperly trained, the Plaintiff cannot show that the CMH Defendant was deliberately indifferent in its training.  On either theory of municipal liability -- a *Monell*-style policy or a theory of a failure to train or supervise -- the record is bereft of any evidence that supports liability against AVCMH.  This is fatal under Fed R Civ P 56(c) and summary judgment is appropriate.  Therefore, the Court should dismiss this action against AVCMH.

## II.   *DOE V CLAIRBORNE COUNTY* SUPPORTS THE ANALYSIS IN THIS CASE.

In the Court's Order Striking Defendant's Notice of Renewal of Motion for Summary Judgment, the Court specified certain issues that it wanted addressed in this Brief.  One of those issues was to address observations made by the Sixth Circuit in *Doe v Clairborne County*, 103 F3d 495, 509 (6th Cir 1996).  The Sixth Circuit's observation in *Doe*, that a State's duty to provide a reasonably safe environment for the involuntarily committed, "does not depend upon a finding of a custom or policy," is inapplicable to the municipal liability claim in this case.  Although this quote may appear to lessen Plaintiff's burden here, the statement does not change the fact that, two pages earlier in that opinion, the *Doe* Court considered the claim of municipal liability.  *Id*. at 507.  Specifically referring to the municipal liability claim in that case, the Court reasoned:

> Doe cannot base her claim against the County and the School Board solely on Davis's conduct, for *respondeat superior* is not available as a theory of recovery under section 1983.  *Monell v Department of Social Servs*, 436 US 658, 691, 98 S Ct 2018, 2036, 56 L Ed2d 611 (1978).  Rather, she must show that the School Board *itself* is the wrongdoer.  *Collins*, 503 US at 122, 112 S Ct at 1067.  Under *Monell*, the County and the School Board cannot be found liable unless plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right.

*Id*. at 507.

The *Doe* Court further reasoned:  "Just as the existence of a constitutional right must be the threshold determination in any section 1983 claim, the finding of a custom or policy is the initial determination to be made in any municipal liability claim."  *Id*. at 509.  In *Doe*, the Court dismissed

the municipal liability claim against the School Board and the County due to a lack of evidence to support a policy or custom of unconstitutional behavior, just like the Plaintiff lacks evidence in this case. *Id*. When the *Doe* Court remarked that the State's duty, "does not depend upon a finding of a custom or policy," the Court was addressing an alternative argument made in that case on the basis of *DeShaney v Winnebago County Dep't of Social Servs*, 489 US 189, 197 (1989), which the *Doe* Court ultimately rejected. *Id*. at 510. Consequently, *Doe* makes clear that a municipal liability claim does turn on whether a plaintiff can point out a custom or policy which is the moving force behind the deprivation.

The fact that the Plaintiff has amended her Complaint against AVCMH to allege a 14th Amendment substantive due process claim does not change the Plaintiff's obligation to prove a policy or custom against AVCMH. Plaintiff may not rely upon vicarious liability, which is precisely what the Plaintiff is trying to accomplish here. Moreover, unlike *Doe*, the Plaintiff in this case has not named any individual employees as defendants.

### III.   THE 14TH AMENDMENT SUBSTANTIVE DUE PROCESS ANALYSIS RECOGNIZED IN *TERRANCE V NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL* APPLIES TO INDIVIDUALS, NOT MUNICIPAL LIABILITY CLAIMS.

Another issue that the Court wanted to be addressed in this Brief concerns the Sixth Circuit's decision in *Terrance v Northville Regional Psychiatric Hospital*, 286 F3d 834, 848 (6th Cir 2002). In *Terrance*, while examining the case in light of *Youngberg v Romeo,* 457 US 307 (1982), the Court properly applied *Monell* to the 8th Amendment claim against the agency defendants, and held that an agency's potential liability is not subject to the doctrine of *respondeat superior* in the absence of some evidence of a policy or custom. *Terrance*, 286 F3d at 847. Accordingly, the *Terrance* panel dismissed the case against the municipal entity. Thus, *Terrance* does not change the Plaintiff's obligation to prove a policy or custom against AVCMH.

As opposed to the 8th Amendment claim, the *Terrance* Court also recognized that the Due Process Clause of the 14th Amendment affords the involuntarily committed certain rights regarding

their treatment. *Id.* at 847-848.  Following *Youngberg v Romeo*, 457 US 307, 315 (1982), the *Terrance* Court recognized the potential for civil liability against professionals violating such rights, when a decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Terrance*, 286 F3d at 848 (emphasis added).  A professional decision maker is defined as "a person competent, whether by education, training or experience, to make the particular decision at issue." *Youngberg* 457 US at 323, fn. 30; *Collignon v Milwaukee County*, 163 F3d 982, 989 (7th Cir. 1998) ("the professional judgment standard only applies to decisions made by professionals such as physicians, psychiatrists, and nurses within their area of professional expertise").

In this case the Plaintiff has not named any individual defendant who would qualify as having made a professional judgment violating the Plaintiff's rights, such as was the case in *Terrance*.  AVCMH is simply not a "professional" whose decision could be considered to be a substantial departure from accepted professional judgment.  The analysis advocated by the Plaintiff (Plf's Amd. Compl., ¶ 28), as discussed in *Youngberg* and *Terrance*, is simply inapplicable to a municipal liability claim.  Any potential liability against a municipality may only be determined as through any policy or custom of the agency itself, following the dictates of *Monell* and its progeny.  Otherwise, local governmental units could be held liable under §1983 on a *respondeat superior* theory, which is clearly not permissible.  *Monell, supra*.

In *Graham v County of Washtenaw*, 358 F3d 377, 383 (6th Cir 2004) (a §1983 case upholding summary judgment for the defendant county) the Court stated:

> There must be "a direct causal link" between the policy and the alleged constitutional violation such that the County's "deliberate conduct" can be deemed the "moving force" behind the violation. These stringent standards are "necessary to avoid de facto respondeat superior liability explicitly prohibited by Monell." (internal citations omitted

The 14th Amendment substantive due process analysis utilized in *Youngberg* and *Terrance* applies to the professional judgment of individuals.  In this case the Plaintiff might have named, and was given the opportunity to name, such an individual, but she did not do so.  Plaintiff cannot now use a test for individuals to establish a claim against the municipal entity, especially in light of the well settled analysis appropriate for establishing municipal liability, as pointed out thoroughly in Section I of this Brief.  An agency's liability must still be based upon some evidence of its policy or custom being a moving force behind the constitutional violation.

The Michigan Supreme Court has recognized that a party asserting a constitutional violation under §1983 must meet different standards of proof depending on whether the claim is asserted against an individual or a corporate entity.  *Jackson v Detroit*, 449 Mich 420, 434, 537 NW2d 151 (1995).  In fact, this District Court has recognized the difference, citing to *Doe, supra*:

> To defeat summary judgment on her remaining § 1983 claims of municipal liability, Plaintiff must present evidence that Defendant Rochester Community Schools, the municipal Defendant, is responsible for a deprivation of her constitutional right to substantive due process under the Fourteenth Amendment.  Plaintiff cannot base her claims against the Defendant School District solely on the individual Defendants' conduct because "*respondeat superior* is not available as a theory of recovery under section 1983." *Doe*, 103 F3d at 507 (*citing Monell v Department of Social Servs*, 436 US 658, 691 (1978)).  "Rather, she must show that the School Board itself is the wrongdoer." *Id.* (emphasis in original).

*Elkins v Rochester Community Schools*, Slip Copy, 2006 WL 3030980 (ED Mich) (Opinion attached as Exhibit 11).  Analyzing this municipal liability claim pursuant to the improper professional judgment standard would be like placing a square peg into a round hole.  Even in light of *Terrance*, the appropriate standard recognized by the Courts for analyzing the Plaintiff's 14th Amendment substantive due process claim against a municipal entity continues to be *Monell* and its progeny.

18

**CONCLUSION AND RELIEF REQUESTED**

For the reasons set forth in this Brief, the Defendant respectfully requests that this Court grant its Motion to Dismiss and Motion for Summary Judgment, and award it reasonable costs and attorney fees wrongfully incurred.

Respectfully submitted,

JOHNSON, ROSATI, LaBARGE,
ASELTYNE & FIELD, P.C.

By:    /s/ Patrick A. Aseltyne
Patrick A. Aseltyne (P23293)
Mark E. Rath  (60391)
Attorneys for AVCMH Defendant
303 S. Waverly Rd.
Lansing, MI 48917
(517)886-3800
paseltyne@jrlaf.com

Dated:  April 18, 2007

**PROOF OF SERVICE**

I hereby certify that on April 18, 2007, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to the attorneys of record listed herein.

Respectfully submitted,

JOHNSON, ROSATI, LaBARGE,
ASELTYNE & FIELD, P.C.

By:    /s/ Patrick A. Aseltyne
Patrick A. Aseltyne (P23293)
Mark E. Rath  (60391)
Attorneys for AVCMH Defendant
303 S. Waverly Rd.
Lansing, MI 48917
(517)886-3800
paseltyne@jrlaf.com

Dated:  April 18, 2007